## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 20-CV-22003-COOKE/GOODMAN
### (CASE NO. 03-CR-20759-COOKE)

WILFREDO RODRIGUEZ,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

### REPORT AND RECOMMENDATIONS
### <u>RECOMMENDING DENIAL OF § 2255 MOTION</u>

Movant Wilfredo Rodriguez filed a motion to vacate his 18 U.S.C. § 924(c) conviction, which was based upon multiple predicate offenses related to Rodriguez's participation in a conspiracy to acquire 30 kilograms of cocaine during an armed robbery. [ECF No. 3]. Rodriguez argues that his sentence should be vacated through 28 U.S.C. § 2255 and pursuant to *United States v. Davis*, 139 S. Ct. 2319 (2019). Because one of the four predicate offenses -- conspiracy to commit Hobbs Act robbery -- is no longer a valid predicate crime of violence post-*Davis*, Rodriguez argues that his 18 U.S.C. § 924(o) conviction in Count 3 and his 18 U.S.C. § 924(c) conviction in Count 5 must now be vacated. *Id*.

The Government filed an opposition response to Rodriguez's habeas petition [ECF No. 8] and Rodriguez filed a reply [ECF No. 10]. United States District Judge Marcia G. Cooke referred the § 2255 motion to the Undersigned. [ECF No. 4].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **deny** Rodriguez's habeas motion.

I.    **Introduction**

Rodriguez and a co-conspirator were arrested when they attempted to carry out the armed robbery to steal cocaine and discovered the drug deal was actually a police sting. Rodriguez and the co-conspirator proceeded to trial. At the conclusion of the trial, the jury returned a verdict finding Rodriguez guilty of all six charged counts. Rodriguez was found guilty via a general jury verdict on the following six counts: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; (2) conspiracy to commit Hobbs Act robbery to steal cocaine from a narcotics trafficker, 18 U.S.C. § 1951(a); (3) conspiracy to use or carry a firearm during a drug trafficking crime or crime of violence, 18 U.S.C. § 924(c)(1)(A), (o); (4) attempted possession with the intent to distribute five kilograms or more of cocaine, §§ 841(b)(1)(A) and 846; (5) using or carrying a firearm during a drug trafficking crime or crime of violence, § 924(c)(1)(A); and (6) possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). [ECF No. 1, p. 3].

Rodriguez's ultimate sentence was 360 months for Counts 1 and 4; 240 months for Counts 2 and 3; 120 months for Count 6, with each count to be served concurrent to the other. With regard to Count 5, the Court sentenced Petitioner to 60 months in prison, to be served consecutive to the other five concurrent sentences.

On January 4, 2006, Rodriguez's direct appeal was denied by the Eleventh Circuit. In 2007, the District Court granted the motion as to Rodriguez's ineffective assistance claim (solely to the extent that his sentence be vacated and a new hearing be held), and in 2009 issued an amended judgment in a criminal case, sentencing Rodriguez to 420 months. That appeal did not raise a vagueness challenge, nor a duplicity challenge.

In 2016, Rodriguez filed a § 2255 motion in district court, challenging his 2009 sentence in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), which the district court denied on the merits. *Id*. In 2020, after *Davis*, the Eleventh Circuit granted leave for Defendant to file a second or successive § 2255 challenge regarding his convictions on Count 3 and Count 5.

The challenged 924(o) and 924(c) counts are predicated upon three crimes identified in Count 1, Count 2, and Count 4. That is, one count of conspiring to possess cocaine with intent to distribute (Count 1), one count of conspiring to commit a Hobbs Act robbery (Count 2), and one count of attempting to possess cocaine with intent to distribute (Count 4). The parties agree that Counts 1 and 4 remain valid predicate offenses

3

post-*Davis* pursuant to binding Eleventh Circuit case law but that Count 2 is no longer a valid predicate offense.

Therefore, the Undersigned must analyze whether the Court should vacate Rodriguez's convictions on Count 3 and Count 5 because the jury did not identify which of the three predicate counts it relied upon on the jury verdict form.

## II.    Factual and Procedural Background

### a.  Facts at Trial

In February 2003, Miami-Dade Police Detective Juan Sanchez, a detective belonging to a federal task force that proactively investigates home invasions, became involved with an investigation of a possible home invasion. (CRDE 158:24-27).[1] On February 27, 2003, in an undercover capacity, Sanchez went with "Richie," an informant, to meet with Rodriguez to discuss a home invasion. (CRDE 158:27-28).[2] The meeting, which took place in a parking lot, occurred under surveillance and was videotaped by law enforcement. (CRDE 158:28-29, 30-31; GX 1, 1A, 1B).

---

[1]     References to the docket in the underlying criminal case will be to "CRDE" and references to the instant civil § 2255 habeas case will be to "ECF."

[2]     Each of the meetings were video-taped by surveillance agents. (CRDE 158:45-49; GX 1A, 3-A, 7-A, 13-A). Each of the meetings and several phone calls were also recorded using audio equipment. (GX 1, 3, 7, 13 and 14). The parties stipulated that the videotapes, audiotapes, and transcriptions are accurate, and they were all admitted into evidence. (CRDE 158:47-50; GX 1B-16-B, GX 30).

Sanchez asked if Rodriguez's group wanted to do a home invasion and whether they had done one before. (CRDE 158:27-28). Sanchez told Rodriguez that he was involved in transporting large amounts of cocaine by plane to Miami International Airport and then transporting the cocaine to a stash house after removing it from the plane. (CRDE 158:31-35). Rodriguez stated that he could perform the home invasion of the stash house to steal the cocaine with his brother and cousin, who had experience in home invasions. (CRDE 158:33, 38; GX 1B:8, 11, 15-16). Sanchez informed Rodriguez that there would be weapons at the stash house. (CRDE 158:37; GX 1B:9).

On July 8, 2003, the next meeting took place between Sanchez and Rodriguez in another parking lot. (CRDE 158:42-44). The meeting was arranged by the informant, who instructed Rodriguez to bring his people to the meeting. (CRDE158:42-43). Rodriguez brought his brother and cousin, Julio and Salcedo. (CRDE 158:44, 51). Sanchez asked Rodriguez if he thought they could do the home invasion with Sanchez present at the stash house and Rodriguez responded that they could. (CRDE 158:52; GX 3B:23). Rodriguez asked Sanchez what his cut would be if they stole 30 kilograms of cocaine, agreeing that Sanchez would get five to seven kilograms of the stolen cocaine. (CRDE 158:56; GX 3B:21, 38). Rodriguez stated that they would try not to kill anyone during the invasion; however, Julio stated: "Let me tell you something, if we gotta kill . . . we will kill." (CRDE 158:55; GX 3B:32). Rodriguez told Sanchez to call when he was ready for them to do the home invasion. (CRDE 158:56; GX 3B:38).

On July 14, 2003, after receiving calls from Rodriguez regarding the invasion, Sanchez spoke on the telephone with Rodriguez. (CRDE 158:56-58; GX 4, 4B, 4C). Sanchez told Rodriguez that they would proceed within the next few weeks, after the shipment of cocaine arrived. Rodriguez stated that they were ready. (CRDE 158:59-60; GX 4B:2, 3, 9).

On August 14, 2003, Sanchez met again with Rodriguez, Julio, and Salcedo in a parking lot. (CRDE 158:60-66; GX 7B). The group planned to be armed and to tie everyone up with plastic straps called "flex cuffs." (CRDE 158:61-63; GX 7B:22, 30-31). Sanchez told them that he would provide them with a van and they should put their weapons in the van. (CRDE 158:64). Rodriguez confirmed that they were still interested in doing the robbery and discussed the possibility of future jobs. (CRDE 158:65-66; GX 7B:29, 32).

After this third meeting, agents made final plans to make arrests on August 29, 2003. The plan was for the informant to call Rodriguez and arrange to meet at a restaurant, then the informant would drive them all to a warehouse (purportedly to pick up the van, but, instead, arrests would be made). (CRC158:66-67).

On August 29, 2003, Sanchez called Rodriguez, who told Sanchez that he was ready but would not be bringing Julio because Julio "had a big mouth." (CRDE 158:69-70; GX 9B:2). Rodriguez confirmed that he would come with his cousin and that the two of them could handle the home invasion because "we did it before." (CRDE 158:70; GX 9B:2-3). The informant then called Rodriguez and arranged to meet at the Blue Sky Restaurant. (CRDE 158:74-75; GX 12B-3:2; 12B-4:2-3). Agents placed a recording device

on the informant, who was kept under surveillance as he drove the van to the Blue Sky Restaurant and then to the warehouse. (CRDE 158:74-76, 108-10; GX 13, 13A, 13C).

The informant met Rodriguez and Salcedo, who were dressed entirely in black, in the parking lot. (CRDE 158:78-79; 108-09, 111). Salcedo carried a black bag into the informant's car. (CRDE 158:78-79, 109). The informant then drove them all to the warehouse. (CRDE 158:79-80, 110). A SWAT team was waiting at the warehouse to carry out the arrests inside the warehouse. (CRDE 158:76-77, 80-81, 111-15). Agents recovered a black tote bag in the rear of the informant's car. (CRDE 158:112). Inside the black bag, agents found a Beretta 9-millimeter, a Glock 9-millimeter, two magazines for the Glock and a single magazine for the Beretta, two sets of surgical gloves, one pair of cotton gloves, and 3 sets of handcuffs with keys. (CRDE 158:114-15, 117; GX 19-A, 20A-C, 21A-B, 22-24).

In the police vehicles after the arrests, Rodriguez and Salcedo discussed attempting to flee and doubted they would get bond because their fingerprints were on the guns. (CRDE 158:125-27, 129; GX 14B:7-8; 14 C).

ATF Special Agent Christopher Stapf interviewed Rodriguez after his arrest (CRDE 159:4-6). After waiving his rights, Rodriguez stated that he had come to the warehouse to do a robbery -- to steal 30 kilograms of cocaine that had arrived from Colombia. (CRDE 159:6-11; GX 17). Rodriguez stated that he had brought a bag containing firearms and ammunition, gloves and handcuffs, as well as a change of

clothes. (CRDE 159:10). Rodriguez stated that Salcedo was the person who was to sell the stolen cocaine. (CRDE 159:21-22). Rodriguez told Agent Stapf that he had been approached by the informant to do the robbery and he agreed so he could get money to help Salcedo pay legal fees owed in another case pending against him. (CRDE 159:22-25).

### b. Procedural Background

#### i. Eleventh Circuit Order Granting Leave to File Successive Motion [ECF No. 1]

On May 13, 2020, the Eleventh Circuit entered an Order Granting Leave to File Successive Motion to Correct Sentence as to Counts 3 and 5. [ECF No. 1]. In its Order, the Court noted that on June 24, 2019, the Supreme Court held in *Davis* that the residual clause in § 924(c)(3)(B) is unconstitutionally vague. 139 S. Ct. 2319 (2019).

In *In re Hammoud*, the Eleventh Circuit held that *Davis* announced a new rule of constitutional law within the meaning of § 2255(h)(2) and that the rule applied retroactively to cases on collateral review. 931 F.3d 1032. The Court also noted that *In re Cannon*, 931 F.3d 1236 (11th Cir. 2019), held that the defendant had made a *prima facie* showing that his § 924(o) count, which was predicated on two carjacking counts, four drug-trafficking counts and one count of conspiracy to commit Hobbs Act robbery, might implicate the residual clause of § 924(c)(3)(B). As such, the Court granted the Rodriguez's application.

In the present case, the Court found that in light of *In re Cannon*, and *Brown v. United States*, 942 F.3d 1069, 1075-76 (11th Cir. 2019), and the fact that it is unclear whether Defendant's § 924(c) and (o) convictions are based on an offense no longer considered a crime of violence, Rodriguez has made a *prima facie* case.

However, the Court warned that Rodriguez bears the burden of proving that the jury based its guilty verdict for Counts 3 and 5 solely on the basis of the Hobbs Act conspiracy charge and not the other drug crimes. Under *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017), Rodriguez must show that the residual clause more likely than not led to the sentencing court's enhancement, or that it is just as likely that the court also or solely relied on an alternative clause for the enhancement.

Moreover, in providing leave for Rodriguez to file a successive petition, our appellate court cautioned that this may be difficult to prove, given that the § 924(c) and (o) verdicts rest on "clearly qualifying drug-trafficking predicate" offenses and noted that even the limited record presented to it provided "some indication" that the planned conspiracy to commit Hobbs Act robbery was "**inextricably intertwined** with the charged conspiracy and attempt to possess the cocaine with intent to distribute, both of which the jury found to be proven beyond a reasonable doubt." [ECF No. 1, p. 7 (emphasis added)].

Although the Court granted Rodriguez leave to file a § 2255 motion, it stated that it did not conclusively determine that Rodriguez had made this showing, as the District

Court must evaluate whether Rodriguez's claims meet the requirements of § 2255(h) *de novo. See Randolph v. United States*, 904 F.3d 962, 965 (11th Cir. 2018).

### ii. Rodriguez's Motion to Vacate Pursuant to 28 U.S.C. § 2255 [ECF No. 3]

Rodriguez argues that the jury returned a general verdict, making it unclear which offenses serve as the predicate offenses for his convictions. The jury was instructed that the Government needed to prove, as to Count 3, that Rodriguez conspired to use the firearm in furtherance of "a federal drug trafficking crime, a federal crime of violence, or both." [ECF No. 3, p. 2]. As to Count 5, the jury was instructed that the Government needed to prove that Rodriguez carried the firearm during and in relation to "a drug trafficking crime or crime of violence." *Id.* Because the jury returned a general verdict, Rodriguez contends, it is unclear what offense(s) served as the predicate offense(s) in support of the § 924(o) or (c) convictions.

Rodriguez filed his first 28 U.S.C. § 2255 motion to vacate his sentence in 2007. The Court granted the motion as to Rodriguez's ineffective assistance claim, and amended Rodriguez's sentence to 420 months. In 2016, Rodriguez filed a § 2255 motion to challenge his career-offender status in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), which was denied. In 2020, the Eleventh Circuit granted leave for Rodriguez to file a second or successive § 2255 motion with respect to Counts 3 and 5. Rodriguez notes that the

Eleventh Circuit found that he has made a *prima facie* showing that his convictions on Counts 3 and 5 were unconstitutional.

Rodriguez argues that his sentence under § 924(o) and (c) was imposed in violation of federal law and exceeded the statutory minimums because the underlying convictions were invalid under *Davis*. Moreover, Rodriguez argues that his motion is timely because the Supreme Court's recognition of a new rule of law made retroactively applicable to cases on collateral view triggers a new one-year statute of limitations under U.S.C. § 2255(f)(3). *See, e.g., In re Pollard*, 931 F.3d 1318, 1320 (11th Cir. 2019) (finding that *Davis* announced a new rule of law with retroactive effect in cases on collateral review); *In re Navarro*, 931 F.3d 1298, 1301 (11th Cir. 2019) (same); *In re Cannon*, 931 F.3d 1236, 1241 (11th Cir. 2019) (same); *In re Hammoud*, 931 F.3d 1032, 1038 (11th Cir. 2019) (same). This new rule of law struck down the residual clause, § 924(c)(3)(B), as unconstitutionally vague.

Rodriguez argues that his conviction on Counts 3 and 5 must be reversed because the Eleventh Circuit held in *Brown* that conspiracy to commit Hobbs Act robbery is not a "crime of violence" under § 924(c)(3)(A). 942 F.3d at 1075-76. Rodriguez argues that he is entitled to relief because it is unclear which offenses the jury rested its verdict on, and that the convictions may have rested on an invalid predicate of conspiracy to commit Hobbs Act robbery.

Rodriguez argues that the Court must examine only the trial court's instructions and the jury's verdict, not the sufficiency of the evidence, and that the conviction must be

reversed if it is impossible to say on which grounds the verdict rests. *Stromberg v. California*, 283 U.S. 359, 367-68 (1931) (finding that on collateral review, a general verdict which may have rested on constitutionally invalid grounds must be set aside); *Adams v. Wainwright*, 764 F.2d 1356, 1362 (11th Cir. 1985) (holding that a conviction cannot be upheld if a jury was instructed that a guilty verdict could be returned with respect to any of several listed grounds and one of the listed grounds was unconstitutional).

Rodriguez also argues that the indictment was "duplicitous" because it listed multiple potential predicate offenses in a single § 924(c) count and that a finding that his conviction rested on drug trafficking (rather than conspiracy to commit Hobbs Act robbery) would be a form of "judicial factfinding." [ECF No. 3, p. 11]. Rodriguez cites to *In re Gomez*, 830 F.3d 1225 (11th Cir. 2016), which determined that a general guilty verdict does not reveal any unanimous finding that a defendant's conviction rests on one of the predicate offenses, all of the predicate offenses or some predicate offenses but not others. Rodriguez notes that an indictment listing multiple predicate offenses allows for the defendant's mandatory minimum to be increased under § 924(c) without the unanimity required in *Alleyne v. United States*, 570 U.S. 99 (2013). *Alleyne* prohibits the court from guessing which predicate the jury relied on because doing so would amount to "judicial factfinding." *Id.* at p. 12.

Rodriguez also argues that finding his convictions for Counts 3 and 5 to rest on the drug trafficking predicate offenses would unfairly permit the Government to benefit

from its duplicitous indictment. In order to avoid this prejudice, Rodriguez argues that the Court should remand the duplicitous convictions for resentencing and assume that his convictions under § 924(o) and (c) were predicated on Hobbs Act conspiracy. *See Shepard v. United States*, 544 U.S. 13 (2005); *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (finding that when a Court cannot conclusively identify which offense the defendant's conviction rests on, it should assume that he was convicted of the least serious crime).

Accordingly, Rodriguez requests that the Court vacate and set aside his convictions under § 924(o) and (c) on Counts 3 and 5 and set his case for resentencing.

### iii.   United States' Answer to Rodriguez's Motion to Vacate [ECF No. 8]

In its opposition to Rodriguez's motion, the Government argues that Rodriguez's convictions are valid because the remaining two predicate crimes (conspiracy to possess cocaine with the intent to distribute and attempted possession of cocaine with intent to distribute) are valid predicates unaffected by *Davis*. And because these crimes are inextricably intertwined with the now-problematic Hobbs Act conspiracy count, the Government argues, Rodriguez cannot meet his burden of establishing that the jury relied solely upon Hobbs Act conspiracy. Instead, the Government argues that based upon the evidence submitted at trial and the jury's verdict finding Rodriguez guilty of all counts beyond a reasonable doubt, it is instead more likely than not that the jury relied upon all three identified predicate crimes.

Additionally, the Government argues that there are procedural defects in the case, specifically that Rodriguez did not make these arguments during trial or on direct appeal, resulting in Rodriguez procedurally defaulting on his claims.

First, the Government argues that Rodriguez's 924(c) conviction (Count 5) was predicated on Counts 1, 2, and 4, which were conspiracy to possess with intent to distribute cocaine, Hobbs Act robbery conspiracy, and attempt to possess with intent to distribute cocaine, respectively. In light of the Supreme Court's ruling in *Davis*, which invalidated § 924(c)(3)(B)'s residual clause, a Hobbs Act robbery conspiracy (Count 2) no longer qualifies under this subsection. *See Brown v. United States*, 942 F.3d at 1075-76. However, the Government argues that the validity of Petitioner's § 924(c) conviction is unaffected because that conviction also was predicated on two drug counts, Count 1 and Count 4, which are completely untouched by *Davis*.

The Government argues that there is no dispute that Counts 1 and 4 (conspiracy and attempt to possess with intent to distribute cocaine) are "drug trafficking" crimes under § 924(c)(2). [ECF No. 8, p. 12]. All that § 924(c) requires is that at least one of the predicate offenses qualifies as a crime of violence or a drug trafficking crime, and that the Government prove that the defendant committed it. *See United States v. Frye*, 402 F.3d 1123, 1127-28 (11th Cir. 2005).

The Government contends that Rodriguez was charged with drug trafficking offenses and the jury found him guilty of those offenses. The jury's verdict, coupled with

the facts elicited at trial, prove that Rodriguez possessed a firearm in furtherance of the drug trafficking crimes. Therefore, the Government contends, it is Rodriguez's burden in a § 2255 motion to show that the jury relied solely on the Hobbs Act robbery conspiracy as the predicate for his § 924(c) conviction. The Government argues that Rodriguez cannot meet that burden here and has not attempted to make any sort of showing in support of his burden.

The Government points to *United States v. Steward*, 793 F. App'x 188 (4th Cir. 2019), where the court declined to reverse a 924(c) conviction predicated on Hobbs Act conspiracy and Hobbs Act robbery. Under plain error analysis, the Court found there was no reasonable probability that the result would have been different had the 924(c) offense been predicated solely on the robbery count because, as here, "the conspiracy offense related solely to the robbery offense." *Id.* at 190. Similarly, in *United States v. Nesbitt*, 809 F. App'x 705 (11th Cir. 2020), the Eleventh Circuit declined to reverse a 924(c) conviction predicated upon a Hobbs Act robbery conspiracy count and the corresponding Hobbs Act robbery count. Applying the plain error standard, the Court found that Nesbitt could not demonstrate a reasonable probability that the outcome of the proceeding would have been different.

Next, the Government argues that the Court should consider whether any asserted affirmative defenses (such as the procedural bar or waiver) block Rodriguez's claim. Specifically, the Government asserts that Rodriguez's failure to raise duplicity as a

substantive issue prior to trial, during trial, or even on direct appeal, results in the waiver of the claim. *See, e.g.*, *United States v. Seher*, 562 F.3d 1344, 1359 (11th Cir. 2009); *United States v. Perez*, 580 F. App'x 795, 801 (11th Cir. 2014). The Government argues that Rodriguez's claim is procedurally barred because a defendant must raise a claim on direct appeal or the claim will be subject to the procedural default rules. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986). Rodriguez never alleged that Count 2 was an invalid predicate crime of violence and never objected to the jury's use of a general verdict form or attacked Count 3 or Count 5 as duplicitous.

The Government maintains that Rodriguez's § 2255 claim fails, both through application of the procedural bar and on the merits.

### iv. Rodriguez's Reply [ECF No. 10][3]

In his Reply, Rodriguez first argues that the jury returned a general verdict and did not make a finding or otherwise specify the predicate offense supporting its finding of guilt on the § 924(c) offense in Count 5. *See Stephens*, 462 U.S. at 881. Because the jury returned a general verdict, Rodriguez argues that it must be set aside "if the jury was instructed that it could rely upon any of two or more independent grounds, and one of

_____

[3]     Rodriguez's Reply was improperly filed as a 25-page memorandum without first receiving leave from the Court to file a memorandum over the 10-page limit. The United States, which had requested and obtained leave to file a longer-than-otherwise-permitted memorandum, did not object to this substantially beyond-the-page-limit, however.

those grounds is insufficient, because the verdict may have rested exclusively upon the insufficient ground." [ECF No. 10, p. 3 (citing *Stephens*, 462 U.S. at 881)].

Second, Rodriguez argues that "a general verdict be set aside" even if the constitutional ground, "considered separately, would support the verdict." *Id.*

Rodriguez contends that the § 924(c) conviction must be set aside because the jury's general verdict may have rested exclusively upon the insufficient ground. *Stephens*, 462 U.S. at 881; *see also Parker v. Sec'y for the Dep't of Corr.*, 331 F.3d 764, 778 (11th Cir. 2003).

Rodriguez argues that he is entitled to § 2255 relief because the Government failed to meet its burden of demonstrating the harmlessness of the *Stromberg* error. *Parker* held that if it is "impossible to say" whether a jury's verdict rested on an unconstitutional, invalid theory or a valid theory, then the error is not harmless and relief is required. 331 F.3d at 778. It held further that harmless error could be found only if the jury instructions left no uncertainty that the verdict rested solely on the valid portion of the charge. *Id.* at 781. These conclusions are fully consistent with *O'Neal*'s holding that an "uncertain judge" cannot find an error harmless because in that circumstance, the Government has not met its burden of persuasion. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

Rodriguez also tries to rebut the Government's contention that a procedural default bars his relief. He argues that a procedural default is excused where a defendant is actually innocent of the challenged offenses. *See Bousley v. United States*, 523 U.S. 614,

623 (1998); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Rodriguez argues that since he demonstrated that his § 924(o) and (c) convictions are constitutionally invalid, he is therefore innocent of these offenses and a procedural default poses no bar to his requested relief. *See Bousley*, 523 U.S. at 623.

Moreover, Rodriguez argues that he has demonstrated "cause" and "prejudice" sufficient to excuse any procedural default. Cause exists where the Court "articulate[s] a constitutional principle that had not been previously recognized," that "explicitly overrule[d] one of [its] precedents," and "is held to have retroactive application." *Reed v. Ross*, 468 U.S. 1, 17 (1984). Under those circumstances, Rodriguez argues, "there will almost certainly [be] no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that this Court has ultimately adopted." *Reed*, 468 U.S. at 17.

Additionally, Rodriguez argues that he also demonstrates "prejudice." He contends that the prejudice resulting from being convicted and sentenced for a non-existent crime "is manifest." [ECF No. 10, p. 24]; *see Davis v. United States*, 417 U.S. 333, 346-47 (1974) ("There can be no room for doubt that [a conviction for an act that the law does not make criminal] inherently results in a complete miscarriage of justice and present(s) exceptional circumstances that justify collateral relief under § 2255.").

## III.   Legal Standard and Analysis

### a.   Standard of Review for Section 2255 Motions

Generally, a movant may collaterally attack his federal conviction or sentence when it violates the Constitution or federal law, exceeds the maximum authorized by law, is imposed without jurisdiction, or is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations, internal quotation marks, and bracket omitted). Conviction of "an act that the law does not make criminal [i.e., actual innocence]" "inherently results in a complete miscarriage of justice." *See Davis*, 417 U.S. at 346; *see also Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014) (*en banc*).

### b. Legal Analysis

#### i. The crimes are interrelated.

A § 2255 movant "bear[s] the burden of showing that he is actually entitled to relief on his *Davis* claim, meaning he [must] show that his § 924(c) conviction resulted from application of *solely* the [now defunct] residual clause [in § 924(c)(3)(B)]." *In re Hammoud*, 931 F.3d 1032, 1041 (11th Cir. 2019) (emphasis added) (citing *Beeman v. United States*, 871 F.3d 1215, 1222-25 (11th Cir. 2017); *In re Moore*, 830 F.3d 1268, 1271 (11th Cir. 2016)). Specifically, the movant must show "that it was more likely than not [that] he in fact was

sentenced . . . [solely] under [§ 924(c)'s] residual clause." *See Beeman*, 871 F.3d at 1225. "If it is **just as likely** that the [jury] relied on [§ 924(c)'s] elements . . . clause, solely or as an alternative basis for the [conviction], then [] movant has failed to show that his [convictions in Counts 3 and 5 were] due to use of the residual clause." *See id.* at 1222 (emphasis added); *see also Cannon*, 931 F.3d at 1243 (citing *Beeman*, 871 F.3d at 1222; *Moore*, 830 F.3d at 1272) ("[T]he [§ 2255] movant . . . bears the burden of proving the likelihood that the jury based its verdict of guilty . . . solely on the [offense that is not a crime of violence under § 924(c)'s residual clause], and not also on one of the other valid predicate offenses identified in the count . . . .").

In order to succeed on his § 2255 claim, Rodriguez must prove the likelihood that the jury based its verdict of guilty in Count 3 or Count 5 solely on the Hobbs Act conspiracy, and not also on one or more of the still-valid and interrelated predicate crimes, that is, the conspiracy to possess cocaine with intent to distribute (Count 1) and attempted possession of cocaine with intent to distribute (Count 4). Rodriguez also needs to demonstrate that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (citation omitted).

Here, Rodriguez has *not* shown that it is <u>more likely than not</u> that the jury based his §§ 924(o) and (c) convictions solely on the Hobbs Act conspiracy.

20

The challenged counts are predicated upon three crimes identified in Counts 1 and 4 -- conspiring to possess cocaine with intent to distribute (Count 1) and attempting to possess cocaine with intent to distribute (Count 4).

The facts introduced at trial demonstrate that Rodriguez and his co-conspirators planned to rob a drug courier of approximately 30 kilograms of cocaine located in a stash house, planned to carry firearms to get that cocaine during the robbery, and brought firearms when they attempted to seize the cocaine. The record evidence shows that Rodriguez admitted the object of the robbery was to possess and sell the cocaine. These crimes are all intertwined and were committed as part of one scheme.

These facts, in and of themselves, suggest that the jury based Rodriguez's §§ 924(o) and (c) offenses at least in part on his convictions for conspiracy to possess cocaine with intent to distribute in Count 1 and attempted possession of cocaine with intent to distribute in Count 4, which both remain valid predicates and are unaffected by *Davis*. *Cf. Beeman*, 871 F.3d at 1221 (finding that a movant cannot show a *Johnson* violation if he fails to prove that he would not have been classified as an armed career criminal if the ACCA's residual clause did not exist, which he cannot do if he had enough valid predicate offenses under the ACCA's elements and/or enumerated offenses clauses). The fact that Rodriguez's convictions for Counts 1 and 4 "seem inextricably intertwined" supports this finding. *See Cannon*, 931 F.3d at 1243.

Rodriguez cannot overcome the fact that the crimes are interrelated and inextricably intertwined. *See, e.g., Nesbitt*, 2020 WL 1970519 (declining to reverse a 924(c) conviction that had been predicated upon a Hobbs Act robbery conspiracy count and the corresponding Hobbs Act robbery count and finding that even when applying the plain error standard, defendant could not demonstrate a reasonable probability that the outcome of the proceeding would have been different); *Steward*, 793 F. App'x at 190 (declining to reverse a 924(c) conviction that had been predicated on Hobbs Act conspiracy and Hobbs Act robbery and finding that there was no reasonable probability that the result would have been different had the 924(c) offense been predicated solely on the robbery count because, as here, "the conspiracy offense related solely to the robbery offense").

Any reasoned assessment of the trial evidence demonstrates that the offenses were all substantially interrelated. This interrelatedness undermines Rodriguez's theory and his ability to meet his burden. *See, e.g., Cannon*, 931 F.3d at 1243 (emphasis added) (granting movant leave to challenge conviction, noting that the crimes seem "**inextricably intertwined**" and explaining that "it is difficult to see how a jury would have concluded that Cannon was guilty of using [a] firearm during and in furtherance of the underlying

Hobbs Act predicates **without at the same time also concluding** that he did so during and in furtherance of the underlying drug and carjacking predicates").[4]

Here, the interrelatedness is demonstrated by the fact that the very goal of the robbery conspiracy *was* the cocaine that is at issue in Counts 1 and Count 4. [CRDE 14 (Indictment) at Count 3 ("[D]efendants **did plan to take cocaine** from individuals they believed to be engaged in drug trafficking by means of actual and threatened force, violence, and fear of injury . . .") (emphasis added)].

Additionally, the cocaine that was the object of the drug trafficking offenses (Count 1 and Count 4) was the evidence that met the requisite effect on commerce in the now-problematic Hobbs Act conspiracy count (Count 2). For Count 2, the jury was instructed: "You are instructed that you may find the requisite effect on interstate commerce has been proved if you find beyond a reasonable doubt that the narcotics that the Defendant intended to obtain traveled or would have traveled into the States of Florida from some point outside the States." [CRDE 100, p. 14].

The *Cannon* Court cited with approval *United States v. Vasquez*, 672 F. App'x 56, 61 (2nd Cir. 2016), in which the Second Circuit affirmed a Section 924(c) conviction that was predicated on both a narcotics trafficking crime and a Hobbs Act conspiracy where "there

---

[4]    After the *Cannon* Court granted Cannon leave to file a successive petition, he did so. The District Court has not yet ruled upon his petition. *See* Case No. 19-23145, ECF Nos. 5 (Motion), 6 (Government Answer), and 9 (Reply) (S.D. Fla.).

was no possibility that the jury's § 924(c) [general] verdict rested *only* on a Hobbs Act robbery predicate because (1) the robbery was an act **inextricably intertwined** with and, indeed, in furtherance of the charged narcotics conspiracy, *and* (2) the jury found that narcotics conspiracy proved beyond a reasonable doubt." (italics emphasis in original; bold emphasis added).

While Count 2 is now problematic post-*Davis*, the inextricably intertwined nature of the counts makes it impossible for Rodriguez to meet his burden of demonstrating that it is more likely than not that the jury relied **<u>solely</u>** upon Count 2 to find Petitioner guilty of Count 3 or Count 5. Based upon review of the charges, the evidence, and the jury's verdict, it is apparent that possession of the firearms was in furtherance of all three identified predicates. *Cf. Figueroa v. United States*, No. 16-CV-4469, 2020 WL 2192536, at *5 (S.D.N.Y. May 6, 2020) (emphasis added) (denying petition targeting conviction for kidnapping -- which is not a crime of violence and therefore not a qualifying predicate for a section 924(c) conviction -- because "**the very same evidence** that proved Petitioner made extortionate threats also established the use of a gun in connection with those threats")[5]; *see also Benjamin v. United States*, No. 20 Civ. 3022, 2020 WL 4887054 (S.D.N.Y.

---

[5]     The *Figueroa* Court then noted that "put differently, the evidence that the jury must have credited in order to convict the Defendant of making extortionate *threats was the evidence* that proved the use of a gun in connection with the extortionate threats." *Id.* (emphasis added). The same can be said of the evidence used to convict Rodriguez here. In other words, the evidence used to convict him of the Hobbs Act robbery was

Aug. 20, 2020) (rejecting petitioner's argument that 924(c) conviction be vacated because, although a racketeering conspiracy is not inherently a crime of violence and cannot constitute a predicate offense, his use of firearms was tied both to a racketeering conspiracy and a narcotics conspiracy).

For these reasons, Rodriguez has not shown that it is more likely than not that the jury based his §§ 924(o) and (c) convictions in Counts 3 and 5 solely on conspiracy to commit Hobbs Act robbery in Count 2. Rather, the record indicates that the jury based said §§ 924(o) and (c) convictions partly on his convictions for conspiracy to possess cocaine with intent to distribute in Count 1 and attempted possession of cocaine with intent to distribute in Count 4. Consequently, he has not met his burden of proof under § 2255 on this *Davis* claim.

Rodriguez argues that *Stromberg v. California*, 283 U.S. 359 (1931) "requires" the Court to vacate his 924(c) convictions. [ECF No. 3, pp. 8-11]. Nevertheless, in *Hedgpeth* the Supreme Court rejected application of *Stromberg* to general verdict cases such as this one, instead holding that the proper test was set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See* 555 U.S. at 58. Courts must determine whether the erroneous jury instructions "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623.

---

necessarily the very same evidence the jury used to convict him of the two narcotics offenses.

However, as outlined above, it is Rodriguez's burden to prove the likelihood that the jury based its verdict of guilty in Count 3 or Count 5 solely on the Hobbs Act conspiracy (and not also on one or more of the still-valid and interrelated predicate crimes). And even then, the Court must also find that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth*, 555 U.S at 58 (citation omitted).

Alternatively, Rodriguez argues that he can prevail under the heightened harmless error standard of *Brecht* because "no one can know which predicate the jury relied on when it found Mr. Rodriguez guilty of the § 924(c) offense." [ECF No. 3, p. 15]. However, as discussed above, Rodriguez carries the burden of proof to demonstrate that the jury relied solely upon the residual clause. Rodriguez has failed to satisfy his burden, and the Undersigned **respectfully recommends** that his § 2255 claim be **denied** on the merits.

### ii.  Rodriguez's Claim is Procedurally Barred.

Alternatively, the Government argues that Rodriguez's claim is subject to procedural default because he was required to allege that Count 2 was an invalid predicate crime of violence. The Government contends that Rodriguez never objected to the jury's use of a general verdict form or attacked Count 3 or Count 5 as duplicitous, and the failure to raise such a claim occurred at trial and on direct appeal.

In order to overcome procedural default, Rodriguez needs to demonstrate both "cause" for his failure to raise the claim earlier and "actual prejudice" resulting from the alleged error. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982). If a prisoner cannot show both cause for his procedural default and actual prejudice, a court should not consider his challenge to his sentence unless he can demonstrate "actual innocence," which "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 621-24.

To show cause sufficient to excuse a procedural default, Rodriguez must "show that some objective factor external to the defense impeded" his ability to raise the claim. *Murray*, 477 U.S. at 488. One such factor can be "novelty," i.e., that the legal basis for the claim "'is so novel that its legal basis is not reasonably available to counsel.'" *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). Nevertheless, Rodriguez's vagueness challenge is not "novel" and the legal basis for the claim was available to him at all times during his prosecution from pretrial proceedings through trial and direct appeal. Rodriguez did not make his challenge until he filed his 2016 successive § 2255 motion, five years after his conviction became final. Therefore, because the legal basis for his argument existed long before *Davis*, Rodriguez cannot demonstrate cause to excuse the default.

While the Court is not required to address the existence of actual prejudice since Rodriguez did not establish cause, Rodriguez also cannot meet his burden to prove actual prejudice. *See Bishop v. Warden, GDCP*, 726 F.3d 1243, 1259 (11th Cir. 2013).

Even if the jury had used a specific verdict form rather than a general verdict form, Rodriguez has not shown a reasonable likelihood that the jury would have found that he carried and used a firearm *only* in furtherance of the conspiracy, but not in furtherance of the cocaine (which was the target of the robbery). Similarly, Rodriguez has not shown a reasonable likelihood the jury would find him guilty of possessing a firearm in furtherance of the plan to obtain the cocaine through robbery and not in furtherance of possessing the cocaine with intent to distribute. *See United States v. Vasquez*, 672 F. App'x 56, 61 (2d Cir. 2016) (emphasis in original) ("[T]here was no possibility that the jury's § 924(c) verdict rested *only* on a Hobbs Act robbery predicate because (1) the robbery was an act inextricably intertwined with and, indeed, in furtherance of the charged narcotics conspiracy, *and* (2) the jury found that narcotics conspiracy proved beyond a reasonable doubt.").

As detailed above, Rodriguez has not satisfied his burden of demonstrating that the 924(c) conviction was solely predicated upon Count 2. For this reason, Rodriguez cannot demonstrate actual innocence. In fact, the jury found Rodriguez guilty of all three predicate counts. Rodriguez has not credibly challenged the undisputed fact that the recovered firearms were carried during and in relation to each of these interrelated

offenses. Accordingly, Rodriguez has not established actual innocence and cannot overcome his procedural issues.

## IV.    Conclusion

Based on Rodriguez's failure to demonstrate that the jury based its guilty verdict for Counts 3 and 5 solely on the Hobbs Act conspiracy charge (and not the other drug crimes), as well as Rodriguez's inability to overcome the procedural defect in his case, the Undersigned **respectfully recommends** that Judge Cooke **deny** his motion to vacate.

## V.    Certificate of Appealability

"Section 2253(c) bars appeals from 'final order[s]' in § 2255 proceedings '[u]nless a circuit justice or judge issues a certificate of appealability.'" *Jackson v. United States*, 875 F.3d 1089, 1090 (11th Cir. 2017) (quoting 28 U.S.C. § 2253(c)(2)). Section 2253(c) permits the issuance of a certificate of appealability only where a petitioner has made a "substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citation omitted). This requires the petitioner to, in turn, show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (internal quotations omitted).

Here, the Undersigned finds that reasonable jurists could debate whether the jury rested its verdict on an invalid predicate of conspiracy to commit Hobbs Act robbery. Accordingly, the Undersigned **respectfully recommends** that Judge Cooke issue a

certificate of appealability.

## VI.    Objections

The parties will have 14 days from the date of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, October 28, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to:</u>**

The Honorable Marcia G. Cooke

Counsel of Record